# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

| | | |
|---|---|---|
| CITYVIEW AT RIVERWALK, LLC and | ) | |
| FOCUS DEVELOPMENT, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | No.: 3:11-CV-50 |
| | ) | |
| v. | ) | |
| | ) | |
| KNOXVILLE'S COMMUNITY | ) | |
| DEVELOPMENT CORPORATION and | ) | |
| THE CITY OF KNOXVILLE, TENNESSEE, | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS

### INTRODUCTION

The Plaintiffs' Response in Opposition to the Partial Motion to Dismiss does not address the substance of the Motion. Instead, the Response attempts to re-characterize the Complaint through an eleven page re-imagining of the allegations and to lob attacks at the diligence and efforts of the Defendants.[1] The Response's reworking of the Complaint is so severe in places that it resembles an amended pleading. However, as shown in Section I herein, the face of the Complaint speaks for itself without need for further explanation or rendering: the Plaintiffs' Complaint focuses on the draw of the Letter of Credit and application of its proceeds.[2] Article 5

---

[1] The Defendants are variously described as "obfuscat[ing]," failing to "spend the time to understand the nature of Plaintiffs' claims," presenting a "straw man argument," using a "dilatory tactic," and making an "erroneous characterization," to bring a Motion that is "meritless," "misdirected," "irrelevant," "misguided," "frivolous," "galling," "disingenuous[]," "patently baseless," "patently frivolous," constituting "procedural bad faith," "completely ignor[ing] the claims," and raising "vacuous arguments," all of which are accompanied by a series of "procedural blunder[s]," and "calculated delay tactic[s]" that "truly miss[] the mark."

[2] By a simple search using Adobe Acrobat, the Plaintiffs use the term "Letter of Credit" 85 times in the Complaint while referring to the underlying contracts far less often – 25 times for the "TIF Agreement" and 38 times for the "P&I Agreement." The truth is glaring: the Complaint repeatedly and unflinchingly refers to the proceeds of the Letter of Credit and seeks the return of those proceeds.

of the Uniform Commercial Code (hereinafter referred to as the "UCC") governs letters of credit and any claims made by the Plaintiffs as to the letter of credit must be brought pursuant to that Article. Under Article 5, the Plaintiffs' claims must be dismissed.

Further, the Defendants, as governmental entities, are immune from suit except under the limited circumstances and terms of the Governmental Tort Liability Act. The Plaintiffs have not satisfied the strict terms of the Governmental Tort Liability Act. The Defendants are not subject to trial by jury under that Act and any demand is improper and should be stricken. The Defendants also cannot be held criminally liable for theft of the Letter of Credit proceeds because governmental entities are not subject to the criminal theft statute. As discussed herein, the Plaintiffs are wrong in their procedural and substantive analysis of the Governmental Tort Liability Act.

Rather than addressing the substantive issues raised in the Defendants' Motion, the Plaintiffs devote nearly half of their Reply brief (eleven of twenty-five pages) to re-characterizing the allegations of their Complaint, which they attempt to describe as "straightforward." The Federal Rules of Civil Procedure require a Court to look only to the face of the Complaint in ruling on a Rule 12 motion to dismiss. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir.), cert. denied, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990); *see also Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir.1994). The Plaintiffs' eleven-page re-characterization of the Complaint does not (and cannot) resolve the flaws in the Complaint. The Plaintiffs' claims on the Letter of Credit and its proceeds have no basis except as they arise between the issuer, Georgia Commerce Bank, and the beneficiary, the City of Knoxville.

**I.    The Plaintiffs' position ignores the conditions required to subrogate to rights under a letter of credit created by T.C.A. § 47-5-117.**

In their Response, the Plaintiffs argue that the Complaint does not arise out claims on the Letter of Credit and therefore that the Plaintiffs have no obligation to fully reimburse the issuer of the Letter of Credit, Georgia Commerce Bank, before bringing its claims against the Defendants. But the Plaintiffs argument is contradicted by the plain language of the Complaint and, practically, would make the subrogation rights in section 47-5-117 of the Tennessee Code meaningless, in that an applicant would gain no additional rights against a beneficiary by satisfying the re-imbursement of the issuer requirement of section 47-5-117(b). Further, the Plaintiffs' theory would vitiate the independence principle that is the basis of all letter of credit law.

Section 47-5-117 of the Tennessee Code (UCC § 5-117) governs the subrogation of rights of the issuer and, potentially, the applicant with regard to a letter of credit. Subsection (a) of section 47-5-117 allows the issuer of a letter of credit to subrogate to the same rights and defenses of the underlying contracts <u>if</u> the issuer first honors the beneficiary's presentation. Subsection (b) of section 47-5-117 allows the applicant of a letter of credit to subrogate to the rights of the issuer <u>if</u> the applicant first reimburses the issuer.

The "independence principle" holds that the issuer must pay first, upon a presentation that satisfies the face of the letter of credit, without regard to whether the applicant or beneficiary have performed under the underlying contracts. Tenn. Code § 47-5-103(d); *Langley v. Prudential Mortgage Capital Co.*, 554 F.3d 647, 659 (6th Cir. 1988). However, after paying the beneficiary, the issuer is subrogated to the rights and defenses of a guarantor under UCC § 5-117(a). The issuer then may seek reimbursement of the proceeds of the letter of credit from the beneficiary based upon the amount due under the underlying contracts. *See Tudor Dev. Group, Inc. v. U.S. Fidelity & Guar.*, 968 F.2d 357, 368 (3rd Cir. 1991) (Becker, J. dissenting) (expressly adopted

by the advisory comments to section 47-5-117). This statutory right of subrogation permits the issuer to bring suit against the beneficiary for refund of all or some of the letter of credit proceeds based upon defenses to the underlying contracts. *Id.* If such a suit is brought, the relief requested would necessarily be a justification for application of the letter of credit proceeds and a reimbursement of the same, i.e, an accounting and repayment of all or some of the proceeds to the issuer.

For an applicant to have the right to make these claims on the proceeds of the letter of credit, the requirements of UCC § 5-117(b) must be met – namely, the full reimbursement of the issuer. If this condition is not met, the applicant has no right to such claims against the beneficiary. The Plaintiffs seek to bring claims that only arise from a statutory subrogation interest without satisfying the condition of full reimbursement of the issuer required in that statute. Although the Plaintiffs have the right to bring suit for the underlying contracts in which they and the Defendants have privity, the Plaintiffs, as shown by the plain language of the Complaint, chose not to do so for most of the counts therein. The Plaintiffs may have the right to bring causes of action against the Defendants (in fact, the Defendants do not move to dismiss Count V, which has to do with whether the City "failed to honor Cityview's change order request"), but these causes of action do not relate to and would not be remedied by the proceeds of the Letter of Credit.[3]

In this case, Georgia Commerce Bank, the issuer, has not brought suit against the Defendants. Instead, Focus Development, Inc. ("Focus"), the applicant, seeks to assert claims arising out of the Letter of Credit against the Defendants. As shown by the language of the Complaint itself (rather than the Plaintiffs' re-characterization), the Counts alleged arise out of the draw on the Letter of Credit and the application of the proceeds:

---

[3] Although the Plaintiffs may have the right to bring claims against the Defendants based upon the underlying contracts, the Defendants dispute and deny that the Plaintiffs are entitled to any relief based upon those underlying contracts.

- Count I for Declaratory Judgment: "Cityview's rights under the P&I Agreement with respect to KCDC's right to draw the Letter of Credit are unclear and in dispute." (Complaint ¶ 67) (emphasis added). "Under the so-called 'independence principle,' a bank's duty to pay on letters of credit is independent of whether or not the applicant … and the beneficiary … have performed on the underlying contract." *Langley v. Prudential Mortgage Capital Co.*, 554 F.3d 647, 649 (6th Cir. 2009). Cityview may have the right to assert a claim based upon the P&I Agreement, but that claim in no way relates to or entitles Cityview to the proceeds of the Letter of Credit.

- Count II for Breach of Contract: "Notwithstanding the nonoccurrence of the conditions precedent, the City drew on the Letter of Credit." (Complaint ¶ 73). "Under the so-called 'independence principle,' a bank's duty to pay on letters of credit is independent of whether or not the applicant … and the beneficiary … have performed on the underlying contract." *Langley v. Prudential Mortgage Capital Co.*, 554 F.3d 647, 649 (6th Cir. 2009).

- Count III for Conversion: "Focus is entitled to recover the fair, reasonable market value, the full face amount, of the Letter of Credit." (Complaint ¶ 80). Focus is not subrogated to the issuer's rights unless it fully reimburses Georgia Commerce Bank pursuant to UCC § 5-117(b) and cannot make a claim for reimbursement of those proceeds.

- Count IV for Declaratory Judgment: "Cityview and Focus' rights under the P&I Agreement with respect to the proceeds of the Letter of Credit are unclear and in dispute, and KCDC and the City are advancing interpretations of the City's rights to the proceeds of the Letter of Credit…." (Complaint ¶ 86) (emphasis added).

Cityview may have the right to assert a claim based upon the P&I Agreement, but that claim in no way relates to or entitles Cityview to the proceeds of the Letter of Credit.

- Count V for Declaratory Judgment: The Defendants deny any liability under this claim/allegation but <u>do not</u> seek dismissal of this Count under their Partial Motion to Dismiss because it relates solely to the underlying contracts instead of the Letter of Credit proceeds.

- Count VI for Breach of Contract: "Cityview seeks to recover all the proceeds of the Letter of Credit plus interest…." (Complaint ¶ 97). Cityview is not subrogated to the issuer's rights unless it fully reimburses Georgia Commerce Bank pursuant to UCC § 5-117(b) and cannot make a claim for reimbursement of those proceeds.

- Count VII for Accounting: "Cityview and Focus are entitled to an accounting of the proceeds of the Letter of Credit from and after the drawing date through and including the date of trial." (Complaint ¶ 100). Unless Cityview and/or Focus reimbursed Georgia Commerce Bank pursuant to UCC § 5-117, they are <u>not</u> entitled to such an accounting.

Permitting the Plaintiffs to seek an accounting and reimbursement of the Letter of Credit proceeds without first reimbursing Georgia Commerce Bank would render UCC § 5-117 meaningless. The justification of this subrogation rule is clear: if an applicant has not reimbursed the issuer after a presentation is honored, then the applicant has not been damaged. Georgia Commerce Bank paid the proceeds of the Letter of Credit to the City of Knoxville. The Plaintiffs paid nothing to the Defendants under the Letter of Credit and do not allege that they paid Georgia Commerce Bank. Only Georgia Commerce Bank has expended funds under the Letter of Credit, but the Bank has not asserted a claim against the Defendants. The Plaintiffs cannot

ignore the statutory requirements for subrogation and seek to recover the Letter of Credit proceeds based upon those subrogation rights.

Article 5 of the UCC, as adopted in Tennessee, "applies to letters of credit and to certain rights and obligations arising out of transactions involving letters of credit." Tenn. Code § 47-5-103(a). Because the majority of the Plaintiffs' claims arise out of the draw on the Letter of Credit and the application of its proceeds, Article 5 governs. All such claims by the Plaintiffs fail under the subrogation requirement of UCC § 5-117(b). Further, these claims are barred by the one-year statute of limitations in UCC § 5-115, which reads in its entirety:

> An action to enforce a right or obligation arising under this article must be commenced within one (1) year after the expiration date of the relevant letter of credit or one (1) year after the cause of action accrues, whichever occurs later. A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.

Tenn. Code § 47-5-115. The Plaintiffs' Response asserts that the text of this code section "expressly applies to 'wrongful dishonor claims against the issuer' and also to 'claims between the issuer and the applicant arising from the reimbursement agreement'" and cites to the above code section for these clauses. *See* Response p. 19. As shown by the complete text of section 47-5-115 above, the Plaintiffs are mistaken.

Whether or not the Plaintiff cited to Article 5 of the UCC in the Complaint, that article applies to all "rights and obligations arising out of transactions involving letters of credit." Tenn. Code § 47-5-103(a). The Counts identified in the Defendants' Partial Motion to Dismiss arise out of transactions involving the Letter of Credit. Article 5 applies, including the subrogation requirements, the statute of limitations, and the award of attorney's fees and expenses to the prevailing party: "[r]easonable attorney's fees and other expenses of litigation must be awarded to the prevailing party in an action in which a remedy is sought under this article." UCC § 5-111(e).

## II.  The Defendants properly moved to strike the Plaintiffs' jury demand for Count III alleging conversion.

The Plaintiffs' Response argues that a motion to strike a jury demand is, "without question" a "procedural blunder" and therefore should not be granted. By its recently reported opinion last year in *Mays v. Tennessee Valley Authority*, 699 F. Supp. 2d 991 (E.D. Tenn. 2010) (Varlan, T. memorandum opinion and order), the precedent of this Court holds to the contrary. In *Mays*, the Defendant Tennessee Valley Authority ("TVA"), a corporate agency of the United States, filed a Rule 12 Motion to Strike All Jury Demands because "there is no right to a jury trial against TVA in these cases." *Id.* at 995. This motion was based upon TVA's sovereign immunity under the Federal Tort Claims Act. *Id.* at 1006. This Court granted TVA's Motion to Strike All Jury Demands. *Id.* at 1003. The District Court for the Western District of Tennessee similarly ruled that a Motion to Strike Jury demand was proper pursuant to the Governmental Tort Liability Act, Tenn. Code § 29-20-101 *et seq.* See *Metaljan v. Memphis-Shelby County Airport Auth.*, 752 F. Supp. 2d 834, 838 (W.D. Tenn. 1990). The Defendants properly moved the Court to strike the jury demand as it relates to Count III of the Complaint.

The Plaintiffs go on to argue in the Response that the Governmental Tort Liability Act (the "GTLA") does not apply to the claim for conversion and that the prohibition against jury trial should not apply. Defendants are at a loss as to how to comport this argument with the Plaintiffs' later argument regarding the GTLA's alleged waiver of immunity for intentional torts. Local governmental entities are immune from suit **except** when a statute explicitly allows them to be sued. *See, e.g., Jane Doe v. Coffee Co. Bd. of Educ.*, 852 S.W.2d 899, 906 (Tenn. Ct. App. 1992). If the GTLA does not apply (i.e., does not waive the government's immunity), then the Defendants are immune from suit – with or without a jury; if the GTLA does apply, then the Defendants cannot be subject to a jury for any tort claims.

**III.    The Plaintiffs failed to state a claim for conversion or criminal theft under the GTLA.**

The Plaintiffs' Response fails to address why the Complaint asserts a criminal theft statute as a basis for recovery against the Defendants. In the Complaint, the Plaintiffs accuse the Defendants of violation of Title 39 of the Tennessee Code (Criminal Offenses), which is the criminal theft statute: "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code § 39-14-103. The Defendants, as governmental entities, are not subject to criminal penalties. The GTLA does not waive the government's immunity to criminal charges. *See generally* Tenn. Code §§ 29-20-101 *et seq.*

Further, the Plaintiffs' Response fails to explain how the Complaint strictly complies with the requirements of the GTLA. "A complaint against a governmental entity for tort must overtly allege that the tort was committed by an employee or employees of the governmental entity within the scope of his or their employment." *Gentry v. Cookeville General Hosp*., 734 S.W.2d 337, 339 (Tenn. Ct. App. 1987). *See also Lockhart v. Jackson-Madison County General Hosp.*, 793 S.W.2d 943 (Tenn. Ct. App. 1990); *Lee v. City of Cleveland*, 859 S.W.2d 347 (Tenn. Ct. App. 1993). In order to state a claim under the GTLA, the claim must be brought "in strict compliance with the terms" of the act. Tenn. Code § 29-20-201(c). It is not sufficient to allege that an individual or party committed a tort under the GTLA; to strictly comply with the GTLA, the Complaint must expressly allege that the individual(s) was acting "within the scope of his or their employment." *Gentry*, 734 S.W.2d at 339. Nowhere in the Complaint do the Plaintiffs allege that any actor on behalf of the Defendants was doing so in the scope of his/her employment. "[A] complaint which does not so state does not state a claim for which relief can be granted because the action is not alleged to be within the class of cases excepted by the statute from governmental immunity." *Id.*

9

## IV. The Plaintiffs are not entitled to recover attorneys' fees.

The Defendants will respond more fully to the Plaintiffs' claim for attorneys' fees in their response in opposition to the Motion for Attorneys' Fees and the Plaintiffs' Motion for Hearing. However, as shown above, the substance of the Defendants' Partial Motion to Dismiss is far from meritless. The Partial Motion to Dismiss should be granted. The Plaintiffs have no right to recover attorneys' fees or expenses for a Motion that should be granted.

Further, the Plaintiffs seek sanctions against the Defendants for filing the Partial Motion to Dismiss without complying with the procedural safe harbor provision of Rule 11:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violated Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

Fed. R. Civ. P. 11(c)(2). This Rule applies to all motions that fail to satisfy the requirements of Rule 11(b) that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." The Plaintiffs did not give the Defendants the twenty-one day notice under Rule 11. The Plaintiffs acknowledge one requirement of Rule 11 by filing a separate motion "to the extent a separate motion for attorneys' fees is required." *See* Response p. 23. However, because the Plaintiffs fail to satisfy the remaining key provisions of Rule 11, the Plaintiffs cannot seek sanctions – even if the arguments in the Response are substantively correct (which the Defendants dispute).

## V. Conclusion

For the purposes of Rule 12, the Complaint itself (and not the Plaintiffs' eleven-page re-characterization of the Complaint) is the sole source from which this Court must determine whether the Plaintiffs state a claim upon which relief may be granted. The Plaintiffs, in their

Complaint, improperly seek to recover the proceeds of the Letter of Credit without satisfying the reimbursement condition of Article 5 of the UCC. These claims must be dismissed. Even if the Plaintiffs had subrogated to the rights of Georgia Commerce Bank, the one year statute of limitations expired prior to the filing of the Complaint.

The Defendants, as governmental entities, are immune from suit unless there is a specific statutory waiver of such immunity and the claimant has strictly complied with that requirement. There is no such waiver for criminal theft; there is no such waiver for a jury trial; and there is no such waiver for suit unless the Complaint expressly alleges that the governmental actor was in the "scope of employment."

The Defendants' Partial Motion to Dismiss should be granted and the Court must award the Defendants' attorneys' fees and expenses pursuant to section 47-5-111(e) of the Tennessee Code (UCC § 5-111(e)).

By:    /s/ Andrew L. Colocotronis
Andrew L. Colocotronis, #17052
W. Edward Shipe, BPR #23887
**WAGNER, MYERS AND SANGER, PC**
1801 First Tennessee Plaza
800 S. Gay Street
Knoxville, Tennessee 37929
865.525.4600 (Telephone)
865.291.0219 (Facsimile)
acolocotronis@wmspc.com

*Counsel for Defendants*
Knoxville's Community Development Corporation
and The City of Knoxville, Tennessee

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2011, a copy of the foregoing was filed electronically. Notice of filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access the filing through the Court's electronic filing system.

/s/ Andrew L. Colocotronis
Andrew L. Colocotronis